(42 South. 193.)

No. 16,009.

HANDY et al. v. BARBER ASPHALT CO.

(Oct. 15, 1906. Rehearing Denied Nov. 12, 1906.)

1. MUNICIPAL CORPORATIONS — DEFECTS IN STREET—LIABILITY OF STREET CONTRACTOR.
 Where, under a contract with a municipal corporation calling for different kinds of work in a public street, including the excavating in the banquette of drain pools and the covering of the same with iron lids, the contractor completes the pools and places the lids on them, all as contemplated by the contract, his obligation, so far as the public is concerned, with respect to the keeping of the lids in position, is no greater than that of any other member of the community, even though his work as a whole has not yet been accepted by the corporation.
 [Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, §§ 1688, 1689, 1794.]

2. SAME.
 Where the employés of a street contracting corporation, whilst engaged in its work, displace the lid of a drain pool excavated in the banquette of a public street, so as to render it unsafe to walk on, or, it being already displaced by a third person, so covers it with sand or other material used by them as to conceal its dangerous condition, the corporation is liable in damages for injuries sustained by a pedestrian who, in stepping on the displaced lid, is precipitated into the hole which it is intended to cover.
 [Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, §§ 1688, 1689, 1794.]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by Ella Handy and another against the Barber Asphalt Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Saunders & Gurley, for appellant. Julian Bernard Habans, for appellees.

### Statement of the Case.

MONROE, J. Plaintiff, duly authorized, seeks to recover damages for personal injuries which she attributes to the negligence of defendant in leaving insecurely covered a hole which had been excavated by it in the sidewalk on Constance street, in New Orleans. The answer is a general denial and a plea of contributory negligence. The facts, as we find them from the record, are as follows: Defendant was engaged in the execution of a contract with the city of New Orleans which called for the paving and curbing of Constance street (between Calliope and Race and between Orange and Felicity); for certain subsurface drainage work, which necessitated the excavation of small pools, here and there, in the sidewalk; and for the replacing of the sidewalk where disturbed. The pools referred to, varying in depth from 12 to 36 inches, were to be so situated as to render necessary the disturbance, and hence the replacing, of the sidewalk for a distance of about 3 feet back from the curb. The openings of the pools were required to be protected by circular cast iron rims, with their tops countersunk for the reception of movable lids of the same material. As a matter of fact the castings for each pool weigh 70, and the lid 25 or 30, pounds, and the whole is so arranged that when the lids are in position they present a surface which is flush with, and in fact forms a part of, the surface of the sidewalk, and is about as safe for pedestrians as any other part.

Defendant had completed the work of resetting the curb, excavating and equipping the pools, and replacing the sidewalk on the West side of the street (in the square between Calliope and Gaienne streets), and was engaged in accumulating the material necessary for the paving, and it is said that the inspector, representing the city, had approved of the work as thus done, though it is not

asserted that the city was bound by such approval, or that the work called for by the contract had been, as a whole, either completed or accepted. The material · referred to consisted of sand, broken rock, and probably lime and cement. The sand was being dumped from carts "on the edge of the curbing," and, with that which was intentionally spread upon, more or less covered the banquette, including that portion which was represented by the lids of the pools. That being the situation, on May 20, 1905, plaintiff, accompanied by her little child, whilst walking on the banquette, turned for a moment in order to take the child's hand, and then, again turning and proceeding in the direction in which she was going, trod on the lid (partially, if not wholly, concealed by the sand) of one of the pools, and (the lid being, presumably, out of position, and tilting with her) fell, or sank, through the opening, to her hip, and was thereby very seriously injured. There is testimony on behalf of defendant showing that· the work upon the banquette, including the setting of the curb, the putting in of the pools, and the relaying of the bricks, had been done according to the specifications of the contract, and had been completed for several weeks, or perhaps a month, and that, when completed, the lids had been placed in their proper positions on the pools; but it is said by the defendant's foreman that they had been at times removed by mischievous boys of the neighborhood. This we take to be an inference, as the witness does not testify that he ever saw them so removed. The foreman would also apparently have the court believe that he saw the particular lid in question in position on the morning of the accident, and that no material was so deposited on that square as either to displace or conceal it. His testimony upon the first of these points is, however, conflicting, and upon the second is flatly contradicted by that of the man (also examined as a witness on behalf of the defendant) who actually received and checked the material. Upon the issue thus presented, we conclude that, though the work about the banquette had been completed, it was still, as part of an unfinished contract, if not in defendant's charge, at least subject to its use, and that defendant's employés, in dumping and spreading the sand upon the banquette, either displaced the particular lid in question, and concealed the displacement with the sand, or else that they so concealed the displacement, which already existed and was the work of some third person. The defendant's superintendent of construction seems to think that this could not have been the case; for, as he says in his testimony :

"If the cover was off, the sand would have fallen in the hole. I don't see how that could be. The cover was certainly placed on there, or the sand would not be there. We were dumping sand in large cart loads, and it surely would have filled up the little hole, if the cover was off."

It may be here remarked that this witness was not very accurately informed as to some of the facts. He never saw the particular hole, or the cast iron rim, or the lid, here in question. He testifies that the castings weigh together 60 pounds, and that the lid weighs between 15 and 20 pounds, and that the latter could easily be removed by a boy eight or ten years old. Upon the other hand, the iron founder by whom the castings were made testifies that they weigh 70 pounds, and that the lid itself weighs 25 or 30 pounds. The witnesses all agree that the lid, when in position, rests, and fits, in a set-off, which is made in the rim for its reception; but it does not follow that it may not be displaced sufficiently to tilt when trod on, and yet not sufficiently to allow the free passage of sand dumped or spread on it. It appears from the testimony that the pools are about in the middle of the 3-foot space in the banquette which the defend-

ant disturbed and relaid, and, as the lids are 18 inches in diameter, it follows that they are but 9 inches from the curb. When, therefore, the sand was dumped on the curb, it is more than likely that it, or the driver, in clearing it from his cart, displaced the lid, which was the cause of the accident, to the extent of starting it from its socket, thereby rendering it unsafe, or else, as we have said, it having been already slightly displaced and rendered unsafe, its condition was concealed by the covering of sand placed over it.

At the time of the accident, plaintiff was in her thirty-fourth year, was the mother of three children, and was enceinte with the fourth—having been in that condition for about three months. The accident caused a miscarriage, and her family physician testifies that, whereas, she had previously been a perfectly healthy woman, the accident and miscarriage left her with certain lacerations and displacement, and subject periodically to excruciating pain, from which (in January, 1906) he saw no immediate prospect of relief. Another physician, who, on behalf of the defendant, examined the plaintiff about four months after the accident, seems to acquiesce in the statement, contained in a question propounded by defendant's counsel, that "this lady has said that she suffers great pain and backache, and that her health has been weakened and impaired, as the result of an accident which brought on premature birth," and he testifies that she was suffering from two distinct troubles, which, he believed, could be cured by surgical operations—the one caused by the miscarriage; the other, in his opinion, having a more remote origin. This latter view is, however, distinctly at variance with that of plaintiff's family physician, from whose testimony it appears that the trouble thus referred to did not exist prior to the accident.

The case was tried in the district court before a jury, which found for the plaintiff in the sum of $2,500, and the verdict was made the judgment of the court. Defendant has appealed, and plaintiff answers praying that the amount be increased to $7,500.

## Opinion.

Whilst defendant's contract required it, among other things, to excavate drain pools in a public thoroughfare, it also required it to provide the pools so excavated with covers, to be made according to specifications, and to turn them over to the city with the covers on them, and it did not contemplate that the pools should for a moment be left uncovered, or insecurely covered. Hence, conceding that, several weeks before the accident to the plaintiff, defendant had completed the pools, and as a finishing touch had placed the covers securely in position. Nevertheless, if the covers had thereafter been removed, whether by defendant or a third person, and the whole work called for by the contract, including the pools, had been tendered as completed, the city would have been under no obligation to accept it, because the pools, without the covers on them, would have been incomplete. As between the defendant and the city, the former was therefore obliged by its contract, not only to complete the work in all its parts, but to keep it in a completed condition until tendered for acceptance, and it would have been no answer to a demand for the fulfillment of that obligation for it to have said that its (once) completed work had been rendered incomplete by the pranks of mischievous boys. Upon the other hand, the defendant, having excavated the pools and having placed the covers on them all, as required by the contract, was under no greater obligation, so far as the public at large was concerned, to keep the covers in position than was any other corporation in the community. Any other corporation in the community would, however, be liable for the negligence of its agents,

acting within the scope of their employment; and, if the agents of any other corporation, whilst engaged in its work, had displaced the cover on a pool, excavated in the sidewalk of a street, so as to render it unsafe to walk on,. or, it being already displaced, had covered it over with sand so as to conceal the danger, such corporation would be liable to third persons for the consequences of such negligence. And it is upon this basis of fact, as found in the statement which precedes this opinion, that we think the defendant should be held liable for the injury sustained by the plaintiff. As to the amount, we find no sufficient reason for disturbing the verdict of the jury.

The judgment appealed from is accordingly affirmed, at the cost of the appellant.

NICHOLLS and LAND, JJ., take no part, not having heard the argument.